UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Robert Rockwood
and Roxana Marchosky

v.                                    Civil No. 08-cv-168-JL
                                      Opinion No. 2010 DNH 171
SKF USA Inc.

**MEMORANDUM ORDER**

The defendant, SKF USA Inc., moves to impose sanctions on
the plaintiffs, Robert Rockwood and Roxana Marchosky, for
allegedly failing to preserve and destroying documents
potentially relevant to this case, which arises out of a failed
deal between the parties for the acquisition of the plaintiffs'
company, Environamics, Inc.  SKF asserts that, after the
plaintiffs threatened this lawsuit, they (1) failed to ensure
that the Environamics business records would not be destroyed
following its lender's foreclosure, repossession of the company's
assets, and the sale of those assets to a third party, and
(2) replaced the hard drives on laptop computers they used in
connection with company business, then deleted files from those
computers after this court ordered their production in discovery.

Characterizing these transgressions as spoliation and, in
the case of the deleted files, a violation of the court's

discovery order, SKF seeks dismissal of the case.[1]  This court has jurisdiction over this matter between the plaintiffs, New Hampshire citizens, and SKF, a Pennsylvania-based corporation, under 28 U.S.C. § 1331(a)(1) (diversity).

SKF is entitled to some relief, just not the relief it has requested.  As explained _infra_, because the record assembled on the motion does not support SKF's charges that the plaintiffs negligently or intentionally destroyed relevant documents, its request for dismissal is denied.  The plaintiffs took steps that were reasonable under the circumstances to preserve the business records stored at the Environamics facility and any files stored on their laptops' hard drives.  And, though Rockwood admits to having deleted the electronic versions of a handful of documents that were responsive to SKF's document requests, he swears that he did so without realizing that fact, and he has since produced paper copies of them in any event.  Nevertheless, this intentional deletion of files, combined with Rockwood's use of

---

[1]SKF's opening memorandum also requests "the attorneys' fees and costs it has incurred as a result of Plaintiffs' discovery abuses," but it is unclear whether SKF means its expenses incurred in (1) moving to compel the production of the laptops, (2) moving for sanctions, or (3) defending the case in its entirety.  And SKF's reply memorandum states that "dismissal is the only meaningful sanction in this case in light of Plaintiffs' repeated assertions that they are impecunious."  The court therefore denies SKF's request for fees and costs as either inadequately presented or waived.

file-cleaning software on both his and Marchosky's laptops after SKF filed its motion to compel their production, supports drawing an adverse inference against Rockwood's credibility as a witness at any trial on the merits in this matter.

## I.   **Background**

SKF, the American subsidiary of a multinational bearing manufacturer, began distributing products for Environamics, a New Hampshire-based company that makes industrial pumps, in 2004. The plaintiffs, Environamics' sole shareholders, also entered into an agreement with SKF giving it the option to buy the company at a price dependent in part on its profits over a specified period of time in the future.

The plaintiffs allege that, through words and conduct amounting to a promise that SKF would indeed buy Environamics, SKF induced them to secure a loan to the company from Wells Fargo--to be personally guaranteed by the plaintiffs--the proceeds of which would fund a sales effort for Environamics products.  The plaintiffs claim that, after they did so, SKF made only "weak" attempts to sell the products, requiring Environamics to draw down the entire $3 million available under the loan and, ultimately, leaving it unable to repay the debt.

As the parties' relationship was deteriorating in December 2005, the plaintiffs threatened suit against SKF.  SKF responded, in relevant part, by asking Rockwood "to preserve and maintain all documents, including but not limited to electronic communications, pertaining to the SKF/Environamics business relationship."  Environamics eventually defaulted on the loan, and Wells Fargo foreclosed and took possession of the collateral in September 2007.  This included the company's facilities in Hudson, New Hampshire, where Environamics' business records were stored, both electronically and in paper format.

Rockwood says that, after learning of the foreclosure, he "expressly informed" Wells Fargo that it needed to preserve these records, and was assured by Wells Fargo that it would not destroy them.  In a deposition in this case, a Wells Fargo representative denied that any such communications occurred, but confirmed that it did not destroy any SKF documents.  He also testified that, following the foreclosure, the plaintiffs asked him for permission to take documents from the facility, but he refused because he believed those documents belonged to Wells Fargo at that point.  The plaintiffs were twice given access to the facility to make copies of Environamics records, but they recall that they had no more than two hours to do so on either occasion.

4

Rockwood estimates that there were between 1.5 and 2 million pages of Environamics records stored there in hard copy form.

In January 2007, Wells Fargo sold the repossessed Environamics assets to Dickow Pumps, Inc., a company based in Marietta, Georgia.  According to Dickow's representatives, it went on to destroy "some of the records from Environamics that were not necessary to continue operating the business," but retained "the files related to Environamics' customers and sales," as well as the company's computers and servers.

The plaintiffs commenced this lawsuit against SKF in March 2008.  During discovery, when SKF expressed concerns about the dearth of documents the plaintiffs had produced in response to its requests, they reported that Environamics' business records had been destroyed following the foreclosure.  In response, SKF asked the plaintiffs to "copy and image the hard-drives" of laptop computers, bearing stickers identifying them as property of Environamics, that they had brought with them to depositions conducted in the case.  The plaintiffs refused, asserting that the computers were their "personal laptops" which they did not use "for company purposes, except on a very occasional basis."

SKF then filed a motion to compel, seeking "an order compelling Plaintiffs to take all reasonable measures necessary to obtain and produce" the documents it had requested, or to pay

SKF's expenses in getting those documents itself.  While the motion noted SKF's unheeded request that the plaintiffs produce the hard drives to their laptops, it principally faulted the plaintiffs for failing to take steps to duplicate or preserve the Environamics business records housed at the Hudson facility before Wells Fargo foreclosed on the loan, or at least before the Environamics assets were sold to Dickow.

In ruling on the motion, the court (Muirhead, M.J.) refused to order the plaintiffs to obtain documents from Dickow, reasoning that SKF could do so itself by issuing a subpoena. This ruling, however, was "without prejudice to later seeking costs attributable to any failure to preserve or spoliation" by the plaintiffs.  SKF subsequently served a subpoena on Dickow and received some 48,000 pages of records in response.  SKF nevertheless says that "it is apparent that many documents had either been lost in the transition, disposed of by Dickow . . ., or had been destroyed by Environamics before it was evicted." Judge Muirhead also ordered the plaintiffs to "physically produce[]" their laptops "so that the hard drive may be mirror-imaged."  The plaintiffs did so on November 13, 2009, eight days after the order had issued.

A forensic analyst hired by SKF to examine the laptops noted that a number of files on Rockwood's machine had been transferred

to the recycling bin on November 7, 2009, two days after Judge
Muirhead's order.  While the deleted files could not be
recovered, the analyst was able to compile a list of their names,
some of which indicated that they were related to Environamics
business.  The analyst also noted that an external flash drive
had been connected to Marchosky's laptop on November 12, 2009,
the day before it was turned over for imaging, though the analyst
does not say whether any files had been transferred to the drive.
Nor does the analyst say whether any files on Marchosky's
computer had been recently deleted.

Furthermore, a program called "CCleaner" had been accessed
on Marchosky's laptop on the same day it was turned over for
imaging, and on Rockwood's laptop on August 12, 2009, two weeks
after SKF filed the motion to compel.  Though the analyst
describes the program as having "the ability to make deleted
files unrecoverable," he does not say whether it was used for
that purpose on either computer.[2]

-------

[2]The analyst also located a handful of e-mail messages
between Rockwood and SKF personnel that SKF says were responsive
to its discovery requests, but not produced.  This led SKF to
file a motion to compel the plaintiffs to provide the passwords
to their e-mail accounts, which were maintained through America
Online.  The parties eventually resolved this motion by
stipulating that the plaintiffs would provide their e-mail
passwords to SKF's analyst for the sole purpose of searching
their accounts for e-mails dated between October 1, 2003, and
March 9, 2008 which contained certain terms.  When this search

The plaintiffs do not deny engaging in these activities, but offer innocent explanations for them.  Rockwood says that, after he was ordered to turn over his laptop, he deleted "certain documents that [he] believed were not relevant to this litigation and not responsive to [SKF's] discovery requests," but that he did so only because he "did not want [his] personal information in the hands of SKF."  He acknowledges, however, that he "should not have made these deletions," and the names of many of the vast majority of the deleted files--as well as Rockwood's descriptions of them--suggest that they were related to Environamics business, rather than personal in nature.[3]

Yet Rockwood adds that a search of his home has turned up hard copies of all but eight of the documents he deleted from his laptop, and that the file names of those eight documents "make it clear they are not material to this proceeding and not[]

_____

was performed, however, it did not turn up any e-mails dated before November 18, 2004--despite the fact that earlier e-mails from the plaintiffs have been produced in this case already, and despite Marchosky's deposition testimony that she never deleted any e-mails from her computer.

[3]Interestingly, Rockwood describes one of the deleted documents as an article "relating to emails and destroyed evidence saved in connection with" an unrelated lawsuit filed against Environamics.

responsive to [SKF's] discovery requests."[4]  Indeed, according to
the plaintiffs, only three of the documents that Rockwood deleted
from his laptop and subsequently located in paper form have any
relevance to this lawsuit, and marginal relevance at that.[5]  SKF
has not taken issue with these characterizations.

Rockwood further explains that, after Marchosky asked for
his assistance in copying a document from her laptop so she could
work on the document while her computer was in SKF's possession,
he attached the flash drive to the machine, but was unable to
copy the document.  He also noticed that her laptop seemed
"sluggish," so he ran the "CCleaner" program in an effort to
improve its performance.  Rockwood states that he used the
program on his own laptop for the same purpose while SKF's motion
to compel was pending, as well as on at least one previous
occasion in early 2009.  He claims that "it never occurred to
[him] that CCleaner could be used to delete documents nor did
[he] ever seek to use it for that purpose."

_____

[4]The file names of those documents are: (1) "Remington
InvestmentTermSheet-EnvironamicsCorporation," (2) "Valuation
ResearchNotesforHearing10-26-05," (3) "VANASSACOMMITMENTLETTERFOR
FUNDING," (4) "VANESSA FIFTH [1] THIRD.BANK.LETTER 4-07-06
(concorrdenadas)," (5) "VanessaJustImagine_SandFantasy,"
(6) "Environamics Employees," (7) "Ken Holliman poolchick-1," and
(8)"Leone_v_Environamics_Hearing_11-01-05_prep_Notes[4]."

[5]Those documents have been produced as exhibits to the
plaintiffs' objection to SKF's motion for sanctions.

Finally, the plaintiffs report that the hard drive on each of their laptops had "crashed" before SKF had even filed the motion to compel:  Rockwood's in May 2007, and Marchosky's in June 2009.  Rockwood reports that he took his laptop to a vendor (whose name and location he cannot recall), who told him that the information on the hard drive was unrecoverable, with the exception of a small number of documents that were transferred to a new hard drive the vendor installed.  Marchosky reports that she took her laptop to Staples, the office supply store, for repairs.  She recalls that she authorized Staples to perform "format/recovery" on the laptop, which she understood as "authorizing that any and all information that could be recovered[] would be."  Marchosky says that Staples recommended that she install a new hard drive, without offering to "retrieve" her old hard drive, and that she authorized that work, which was completed on June 17, 2009.  The plaintiffs have produced a copy of a Staples work order corroborating this account.[6]

---

[6]SKF has produced a different version of the work order, obtained through a subpoena issued to Staples.  This version states that Marchosky's hard drive could have been sent to its manufacturer "for clean room possible recovery" at a cost of roughly $1000-$1,500, but that "[t]he customer decided to install a new drive and do a system restore due to the cost."  But this work order bears a "Complete Date" of November 10, 2009, which is clearly inaccurate based on not only Marchosky's recollection, but also on SKF's analyst's report of when a new version of the operating system was installed on the laptop, i.e., June 2009.

## II.  **Analysis**

SKF argues that the plaintiffs have engaged in spoliation by (1) failing to ensure that the Environamics business records stored at the Hudson facility would be preserved following Wells Fargo's foreclosure on its loan to the company, (2) replacing the hard drives on their laptops without attempting to recover the information stored there, and (3) in Rockwood's case, intentionally deleting files from his laptop just before turning it over for examination.  SKF further argues that, by deleting those files, Rockwood violated Judge Muirhead's order to produce the laptop "so that the hard drive may be mirror-imaged."  The appropriate sanction for this misconduct, SKF maintains, is dismissal of the case.

As a "companion to" the spoliation doctrine, which "permits an adverse inference from one side's destruction of evidence," a court has the "inherent power" to sanction a party who has "improperly altered or damaged" evidence.  Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997). "The intended goals" of deploying this power are

> to rectify any prejudice the non-offending party may
> have suffered as a result of the loss of evidence and
> to deter any future conduct, particularly deliberate
> conduct, leading to such loss of evidence.  Therefore,
> of particular importance when considering the
> appropriateness of [spoliation] sanctions [are] the

prejudice to the non-offending party and the degree of
fault of the offending party.

Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 28 (1st Cir.
1998).

While the authorized punishments for spoliation by a
plaintiff include dismissal of the case, the court of appeals has
cautioned that it "views dismissal with prejudice as a harsh
sanction, which runs counter to [its] strong policy favoring the
disposition of cases on the merits." Id. (quotation marks
omitted).  As discussed more fully below, neither the plaintiffs'
fault for the destruction of any relevant documents nor any
conceivable prejudice that SKF could suffer as a result can
justify such a harsh sanction here.

Nevertheless, Rockwood's intentional deletion of numerous
files (including a number of documents related to Environamics
business) from his laptop just before turning it over warrants
some sanction.  Though, again, this conduct did not prejudice SKF
in any way--because it is undisputed that all of the deleted
documents that were relevant to this case have since been
produced in hard copy form--it was a violation of Judge
Muirhead's order to provide discovery under Rule 37(a) and
therefore punishable by "just orders" under Rule 37(b)(2)(A).
Under the circumstances, the court believes the just sanction is

12

to draw an adverse inference against Rockwood's credibility as a
witness at any trial in this matter (where the court will be
sitting as the finder of fact).

## A.   The Environamics business records

To impose sanctions for spoliation, "bad faith is not
essential"; it is enough that "evidence is mishandled through
carelessness, and the other side is prejudiced."  Sacramona, 106
F.3d at 447.  As to the destruction of Environamics business
records stored at the Hudson facility, however, SKF has not
convincingly shown either carelessness or prejudice.

SKF argues that it "was unreasonable for Plaintiffs to do
nothing to preserve documents related to this litigation"
following the foreclosure by Wells Fargo, but the record shows
that the plaintiffs did make reasonable efforts toward that end.
While there is conflicting evidence on whether the plaintiffs
asked Wells Fargo not to destroy the Environamics records
(Rockwood testifies that he did, while the Wells Fargo
representative testified that he received no such request), it is
undisputed that Wells Fargo did not in fact destroy them.  It is
likewise undisputed that the plaintiffs asked Wells Fargo for
permission to remove records from the facility, but were refused,

and that they were ultimately afforded only a few hours' access
to the records for the purpose of making copies.

Some Environamics business records were destroyed by Dickow
after it purchased the company's assets from Wells Fargo, but SKF
has not suggested what the plaintiffs might have done to prevent
that from happening.  After that sale was completed, in January
2007, the records belonged to Dickow, which--like Wells Fargo
before the sale--would have been under no obligation to share
them with the plaintiffs even had they asked.  As SKF itself
points out (in attempting to deflect the plaintiffs' argument
that SKF, which they had threatened with litigation well before
then, itself "could have sought a court order" requiring Wells
Fargo or Dickow to preserve the records) this lawsuit had not yet
been filed at that point.[7]  Until that happened, there was no

_____

[7]SKF suggests that the plaintiffs "waited until
Environamics' documents were turned over to Dickow Pumps before
they initiated this lawsuit."  While that was indeed the sequence
of events, there is nothing to connect it to any effort or even
hope by the plaintiffs at gaining an advantage in this
litigation.  To the contrary, Rockwood testified, in essence,
that he was surprised to learn that Dickow had destroyed any of
the records and that, until the asset sale took place, he
continued to hold out hope for regaining control of Environamics
by restructuring its debt to Wells Fargo.
    For that same reason, the plaintiffs did not act
unreasonably by failing to copy whatever Environamics records
would have been relevant to this lawsuit at any time during the
period between when Wells Fargo first threatened to foreclose on
the loan and when it finally made good on that threat.  In the
court's view, the fact that two and a half years passed between

vehicle for the issuance of a subpoena for the documents to
either Wells Fargo or Dickow.

Of course, after this lawsuit commenced, SKF ultimately did
issue a subpoena to Dickow for the Environamics business records,
obtaining some 48,000 pages of documents in response.  Though, by
that point, Dickow had already destroyed some Environamics
records "not necessary to continue operating the business," SKF
has not persuasively shown how the loss of those documents has
prejudiced its defense of this action.

The records that were "most notably" missing from Dickow's
production, according to SKF, were correspondence between it and
Environamics, which Rockwood has said he kept in a dedicated
file.  There is no doubting the relevance of those documents to
this action.  Presumably, however, SKF kept its own copies of
that correspondence--it does not suggest otherwise--so the
disappearance of whatever copies had been maintained by Rockwood
would seem to occasion no real prejudice.  If anything, the
absence of documented communications with SKF has the potential

---

those events--while emphasized by SKF--actually supports
Rockwood's stated belief that Wells Fargo would not foreclose on
the loan but would attempt to restructure it.  Furthermore, Wells
Fargo's representative testified that the lender gave no
additional notice to the plaintiffs before finally taking
possession of the facility, because generally "it works better by
surprise.  You don't want any of the collateral to disappear."

to hurt the plaintiffs, who have the burden of proving that those communications amounted to a promise to buy Environamics.[8]

SKF also claims prejudice from the absence of the plaintiffs' communications--either between themselves or with other Environamics personnel--"that reflected their state of mind relative to SKF's obligations or intentions" in purchasing the company, but there is no reason to believe that such documents were among those destroyed by Dickow.  To the contrary, Dickow says it retained the Environamics computers and servers, which is where those communications would likely reside.[9]

SKF's argument for spoliation based on the destruction of certain Environamics records, then, is similar to--and likely even weaker than--the argument for spoliation rejected in

---

[8]The court appreciates the risk that the plaintiffs may try to use this situation to their advantage, e.g., by favorably characterizing written communications from SKF that have not turned up in discovery, making it impossible for SKF to dispute those characterizations.  Should the plaintiffs resort to that tactic at trial, the court will consider granting appropriate relief to SKF at that time.

[9]In its reply, SKF points out that, when it used the plaintiffs' email passwords to access their America Online accounts, they contained no messages prior to November 18, 2004. SKF has not attempted to show, however, that the plaintiffs intentionally deleted those emails, or negligently allowed them to be deleted, after learning of their potential relevance to this case.  But it is worth noting that it was 2005 before the plaintiffs even threatened suit against SKF and SKF responded by asking them to preserve all relevant documents.

<u>Collazo-Santiago</u>.  In that case, a products liability action against an automobile manufacturer arising out of a traffic accident, "the plaintiff's insurance company declared [her] vehicle a total loss and sold it at public auction" before the defendant was able to inspect it.  149 F.3d at 28.  In upholding the district court's refusal to dismiss the case for spoliation, the court of appeals reasoned that the plaintiff "neither maliciously destroyed evidence nor deliberately attempted to prevent the defendant from inspecting the vehicle."  <u>Id.</u> at 29. Instead, "the plaintiff's insurance company sold the car to a third party without the plaintiff's knowledge or consent and the defendant was given the name of the" purchaser but was unable to locate him.  <u>Id.</u>  The court of appeals also relied on the fact that, while inspecting the vehicle may well have revealed facts helpful to the defense, "evidence as to many of these issues could also have been attained through other means."  <u>Id.</u>

Here, there is likewise no evidence that the plaintiffs intentionally destroyed the Environamics business records, which, like the plaintiff's vehicle in <u>Collazo-Santiago</u>, were sold to a third party without their advance knowledge.  Moreover, unlike the defendant there, SKF has not even tried to explain how any of the documents that were destroyed--as apart from the plaintiffs' internal communications, which so far as the record reveals were

17

not destroyed--could be relevant to its defense.  Here, as there,
neither the plaintiffs' fault for the destruction of the
potential evidence, nor the prejudice visited upon SKF as a
result, justifies dismissing the case.

**B.    The information on the plaintiffs' laptops**

SKF also accuses the plaintiffs of spoliation based on their
handling of their laptop computers before producing them as
ordered by the court.  First, SKF argues that the plaintiffs
"lost relevant [information] by replacing the hard drives on
their computers after threatening litigation," electing "not to
have these hard drives forensically restored to recover any lost
information" or, at a minimum, retaining them so that they could
be turned over to SKF for that purpose.  The evidence, however,
does not bear this charge out.

Rockwood says that the vendor who serviced his laptop after
its hard drive "crashed" did attempt to recover information, and
had some limited success in doing so, transferring the rescued
data to the new hard drive.  This is corroborated by the fact
that, as the plaintiffs point out, the forensic analysis of
Rockwood's laptop turned up documents that had been created
before the new hard drive was installed.  Marchosky, for her
part, authorized the vendor who serviced her laptop after its

hard drive crashed to perform a "recovery," and says that the
vendor simply recommended that she install a new hard drive
without offering to "retrieve" her old one.  This is corroborated
by a contemporaneous work order from the vendor.[10]

While, as the plaintiffs acknowledge, "[i]n retrospect . . .
a better practice would have been to preserve the damaged hard
drive" so that SKF could attempt to recover data from it, there
is no reason to think that Marchosky knew or should have known
that would even be possible, based on the vendor's advice that
she simply install a new hard drive.  On this record, the court
cannot conclude that the plaintiffs intentionally or carelessly
permitted the destruction of whatever relevant documents resided
on their prior hard drives so as to justify dismissal of their
case.  See Bryant v. Gardner, 587 F. Supp. 2d 951, 968-69 (N.D.
Ill. 2008) (refusing to enter default against defendant for
spoliation based on his continued use of his laptop, causing

---

[10]It is contradicted by the work order obtained from the
vendor by SKF, see note 6, supra, but that work order clearly
bears the wrong date, and SKF has offered no reason why the court
should rely on that document rather than the contemporaneous
record.  Instead, in a footnote in its reply, SKF explains that
it has been "unable" to schedule a deposition of a witness from
the vendor to explain the discrepancies, but that it would issue
a subpoena for that purpose "[i]f the court deems such testimony
is material to resolve this motion."  It is up to SKF, not the
court, to decide what evidence it needs to support its
allegations that the plaintiffs culpably destroyed relevant
information.

deleted files to become unrecoverable via automated processes,
"even though it was apparent from the beginning of [the] lawsuit
that the laptop likely contained evidence pertinent to [the]
claims," because there was "insufficient evidence of bad faith to
warrant" such a harsh sanction).[11]

Second, SKF argues that Rockwood engaged in spoliation--as
well as a violation of Judge Muirhead's order that they produce
their laptops--by running the "CCleaner" program on them,
attaching a flash drive to Marchosky's machine, and deleting
files from Rockwood's machine, before turning them over to SKF.
But there is no evidence that attaching the flash drive or
running the "CCleaner" program actually resulted in the
destruction of any information on the laptops, relevant or not.

---

[11]The court in <u>Bryant</u> did enter lesser sanctions against the
defendant:  payment of the plaintiff's attorneys' fees and costs
in bringing the spoliation motion, including the costs of the
forensic examination of the defendant's computer, as well as an
order precluding the defendant from arguing that he did not draft
a document that the plaintiff said was a contract between them,
but the defendant said he had never seen before.  587 F. Supp. 2d
at 969.  The court reasoned that "[b]ecause of [the defendant's]
actions, it is impossible to determine whether [his] laptop
contained the agreement Plaintiff claims [he] drafted."  <u>Id.</u>
     Here, though, SKF has not sufficiently presented--or has
waived--any request for costs and fees.  <u>See</u> note 1, <u>supra</u>.  It
also does not appear that the disposal of the plaintiffs' hard
drives directly prevents SKF from negating any of their
allegations, as was the case in <u>Bryant</u>.  Again, however, should
such a situation arise, the court will consider appropriate
relief at that time.  <u>See</u> note 8, <u>supra</u>.

SKF's computer analyst says merely that a flash drive is "the most common and easiest means of transferring files between computers"; he does not say that Marchosky in fact copied any files to the flash drive, or, more importantly, that she went on to delete those--or any--files from her hard drive.  Similarly, he says that the "CCleaner" software "has the ability to make deleted files unrecoverable," but does not say that it was put to that use on either of the plaintiffs' laptops; to the contrary, the analyst was able to recover a list of the files that Rockwood had deleted from his hard drive before he produced it.

Of course, as Rockwood admits, he should not have deleted those documents in the first place.  And his asserted justification for doing so--that he did not want his personal information falling into the hands of SKF--is difficult to accept, in light of the fact that the names of the deleted files and his own descriptions of them suggest that they relate to Environamics business (if not necessarily any of the issues in this case).  In deleting this information, then, Rockwood acted carelessly, if not even more culpably than that.  He also violated this court's order to "physically produce[]" his laptops "so that the hard drive may be mirror-imaged."

While the degree of Rockwood's fault, then, weighs in favor of a spoliation sanction, the prejudice to SKF is less

21

significant.  Based on the list of recycling bin contents compiled by SKF's analyst, Rockwood was able to locate copies of all of but eight of the documents he deleted.  SKF has not questioned the accuracy of Rockwood's search, nor the plaintiffs' claim that none of the documents that are still missing, and only three of the documents that were found, has any potential relevance to this case.

Instead, SKF points to case law to the effect that "courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence."  Se. Mech. Servs., Inc. v. Brody, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009) (citing Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998)).  That concern comes into play, however, only when a party's misconduct prevents its adversary from learning the contents, and hence the relevance, of the spoliated evidence.  That did not happen here: despite Rockwood's actions, SKF's analyst was able to compile a list of the deleted files, almost all of which, as it turns out, still exist in paper form.  Thus, SKF is in a position not only to assess the relevance of the spoliated evidence, but to have the spoliated evidence (the plaintiffs have offered to produce the paper copies if SKF wants them).  Aside from concerns of

22

delay, which SKF does not raise, there simply cannot be any
prejudice from the destruction of evidence that was later
recovered and offered in discovery.

Yet the spoliation doctrine is concerned not only with
rectifying prejudice, but with deterring similar misconduct in
the future.  Collazo-Santiago, 149 F.3d at 29.  Moreover, the
misconduct here violated the court's order granting SKF's motion
to compel under Rule 37(a), and is therefore punishable under
Rule 37(b)(2)(A), which also does not treat prejudice to the
adverse party as essential to the imposition of sanctions.  See,
e.g., Malloy v. WM Speciality Mortg. LLC, 512 F.3d 23, 27 (1st
Cir. 2008).  Rule 37(b)(2)(A) authorizes the court to "issue
further just orders" if a party violates an order to permit or
provide discovery, including a number of specified sanctions.
Though drawing an adverse inference against the offending party
is not among them, the list is non-exhaustive, see, e.g., Novak
v. Wolpoff & Abramson LLP, 536 F.3d 175, 177 (2d Cir. 2008), and
the court of appeals has upheld drawing an adverse inference
against a party for disobeying a discovery order, United States
v. Palmer, 956 F.2d 3, 4 (1st Cir. 1992).

The court believes that, here, drawing an adverse inference
against Rockwood's credibility as a witness, should he testify at
any trial in this matter, is the appropriate sanction.  Two days

after Judge Muirhead ordered Rockwood to produce his laptop so
that its hard drive could be mirror-imaged, he essentially
altered the contents of the hard drive by deleting a number of
documents.  This was a blatant violation of both the letter and
the spirit of the order.

While Rockwood claims he did this to prevent SKF from
accessing his personal information, he had other, legitimate
means at his disposal to do so (e.g., asking SKF to restrict the
list of keywords used to search the hard drive so as to avoid
encountering those files, or seeking a protective order from the
court, see Fed. R. Civ. P. 26(c)) and, again, that claim is
difficult to accept in light of the fact that many of the deleted
files were business-related.  Some sanction is necessary, then,
to serve this court's "strong institutional interest in ensuring
that litigants honor [its] orders."  Malloy, 512 F.3d at 27.
Drawing an adverse inference against Rockwood effects that goal
while also preserving the judicial preference for the resolution
of cases on the merits, rather than by the application of
sanctions.  See Collazo-Santiago, 149 F.3d at 29.

III. **Conclusion**

    For the foregoing reasons, SKF's motion for sanctions[12] is DENIED insofar as it seeks dismissal of the case or the imposition of attorneys' fees and costs, but is GRANTED insofar as the court will draw an adverse inference against Rockwood's credibility as a witness at any trial in this matter.

    **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 30, 2010

cc:  Donald C. Crandlemire, Esq.
    Steven M. Gordon, Esq.
    William E. Aivalikles, Esq.
    David Richman, Esq.
    Gregory A. Moffett, Esq.
    Matthew R. Williams, Esq.
    Peter G. Callaghan, Esq.
    Alexander J. Walker, Esq.

---

[12]Document no. 125.

25