# United States Court of Appeals
## For the First Circuit

───────────────

No. 11-1105

ROBERT ROCKWOOD and ROXANA MARCHOSKY,

Plaintiffs, Appellants,

v.

SKF USA INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

───────────────

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

───────────────

Christopher R. Pudelski, with whom Law Offices of Christopher
R. Pudelski, was on brief for appellants.
David Richman, with whom Matthew Williams, Pepper Hamilton
LLP, Peter G. Callaghan, and Preti Flaherty Beliveau & Pachios,
PLLP, were on brief for appellee.

───────────────

June 28, 2012

───────────────

**TORRUELLA, Circuit Judge.**    Plaintiffs-Appellants Robert Rockwood ("Rockwood") and Roxanna Marchosky ("Marchosky") (collectively, "Appellants") appeal the district court's grant of summary judgment to Defendant-Appellee SKF USA Inc. ("SKF"). Appellants allege that they agreed to personally guarantee certain loans in reliance on promises by SKF to invest in a joint business venture and to purchase Appellants' company.  When SKF failed to deliver on these alleged promises, Appellants were left with millions of dollars in repayment obligations.  Appellants sued SKF on a promissory estoppel theory, but the district court rejected their claim and granted summary judgment to SKF.  After careful consideration, we affirm.

## I.  Background

### A.  Appellants and SKF Meet

We recount the facts in the light most favorable to the Appellants, who were the non-moving party below.  See Aqusty-Reyes v. Dep't of Educ., 601 F.3d 45, 48 (1st Cir. 2010).

Appellants were the co-founders and sole shareholders of Environamics, Inc. ("Environamics"), a Delaware corporation based in New Hampshire.  Until its failure, described infra, Environamics designed, manufactured, and sold pumps and sealing devices for various applications.  In April of 2003, after defaulting on a commercial loan, Environamics was left with a $1.5 million debt to Pioneer Capital ("Pioneer").  During the fall of 2003, Environamics

solicited potential investors and/or purchasers in order to raise money to satisfy its debt to Pioneer. In addition, Environamics and Pioneer discussed converting some of Environamics's debt to Pioneer into an equity position for Pioneer.

In September of 2003, however, a savior appeared -- or so it seemed. SKF[1] learned that Environamics had developed and patented a "universal power frame," a device that SKF had been trying to develop for some time. Appellants met with Timothy Richards ("Richards"), vice president of SKF, to discuss a possible relationship between SKF and Environamics. Two weeks after this meeting, Richards called Rockwood and told him that "SKF had decided to move very rapidly toward a possible acquisition of Environamics." During conversations over the next few weeks, Richards repeatedly expressed SKF's interest in acquiring Environamics.

During this period, Environamics began to share confidential business information with SKF. In addition, Richards told Appellants that in view of SKF's planned acquisition, Environamics should cease seeking out new distribution channels for its products. Appellants complied with this request. Appellants also ceased looking for other opportunities for financing to pay off the debt to Pioneer.

---

[1]  SKF is a subsidiary of AB SKF, a Swedish company.

-3-

**B.   Agreements Between Appellants and SKF**

On January 14, 2004, Appellants entered into an "Option Agreement" with SKF.  The Option Agreement gave SKF "an irrevocable option to purchase all, but not less than all, of the outstanding shares of [s]tock" in Environamics.  The parties also executed a "Buy-Sell Agreement" that made SKF the "exclusive marketer and reseller" of Environamics's pumps and related products; the Buy-Sell Agreement also made Environamics the exclusive supplier of such products to SKF.

SKF's option to buy Environamics was to last for fifteen months.  In addition, the Option Agreement called for the parties to try in good faith to negotiate a nine-month extension if SKF could not reach a target of selling $10 million of Environamics products annually under the Buy-Sell Agreement.  The Option Agreement had an "exercise price" of $9 million, to be adjusted for Environamics's outstanding debt and any remaining obligations between SKF and Environamics.  SKF was also to pay Appellants a royalty of ten percent of SKF's gross profits on sales of Environamics products for a seven-year period.

The Option Agreement contained a clause stating that it, combined with the Buy-Sell Agreement, "constitutes the entire agreement and supersedes all prior agreements, conversations, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof."  The Option

-4-

Agreement also provided that it was governed by Pennsylvania law
"without regard to the laws that are applicable under conflicts of
laws principles."   The Buy-Sell Agreement contained a similar
choice-of-law clause.

**C. Wells Fargo Loan**

        After the parties signed the Option and Buy-Sell
Agreements, SKF paid Environamics $2 million, which Environamics
used to pay off the loan to Pioneer.   Pursuant to the Buy-Sell
Agreement, Environamics officially terminated its relationships
with all of its distributors.   SKF effectively took control of
shipping and marketing for Environamics products, the SKF brand
name appeared on Environamics's products and marketing materials,
and SKF provided the manufacturer's warranty on Environamics's
products.

        Environamics required additional financing to keep up its
day-to-day operations.   Initially, Richards and SKF attempted to
obtain the necessary financing for Environamics.   On February 27,
2004, Richards sent a letter to DSI Investment Banking Services
(the "DSI Letter") in which he stated: "[t]he value of SKF's
corporate commitment to [the Environamics venture] is estimated to
exceed $10 million over the next year to fifteen months."   In March
of 2004, however, Richards informed Rockwood that SKF would not be
in a position to provide additional financing and that Appellants
themselves would need to obtain the necessary financing.   SKF

insisted, however, that Environamics obtain loans, rather than
selling shares of stock, because SKF did not want any other entity
to own Environamics shares.

After Appellants initially were unable to find a lender,
Richards telephoned a contact at a Massachusetts branch of Wells
Fargo and asked his contact to speak with Appellants about
obtaining a loan.  After Wells Fargo twice denied financing,
Richards gave Rockwood a letter dated March 5, 2004 (the "March 5,
2004 Letter") that Rockwood was to give to Wells Fargo in support
of a loan application.  This letter, written on SKF letterhead,
outlined the "resources and assets [SKF] [had] committed to [its]
recently negotiated joint venture with Environamics."  The letter
stated, inter alia, that "the value of SKF's corporate commitment
to this venture is estimated to exceed $10 [million] over the next
year to fifteen months."  In analyzing the risk of a loan to
Appellants, Wells Fargo noted that there was no guarantee that SKF
would buy Environamics; specifically, Wells Fargo recognized that
if the $10 million sales target in the Buy-Sell Agreement was not
met, SKF might not exercise its option.  Ultimately, Wells Fargo
agreed to extend a $3,000,000 line of credit to Environamics, but
only if Appellants personally guaranteed the loan.

Appellants were hesitant to personally guarantee the
loan, and they expressed this concern to Richards.  Appellants
claim that in three separate conversations in or around April of

-6-

2004, Richards assured them that SKF would buy Environamics. As discussed below, exactly what Richards said is the subject of considerable confusion. After these conversations, Appellants agreed to personally guarantee the Wells Fargo loan.

**D.  Breakdown of Relations Between Environamics and SKF**

By October of 2004, it became clear that the SKF/Environamics venture would not meet the $10 million sales target under the Buy-Sell Agreement. Appellants blamed this shortfall on SKF's failure to make sufficient effort to sell Environamics products, while SKF blamed it on weaker than expected market demand. At this point, SKF informed Appellants that it would not proceed with an acquisition under the Option Agreement. SKF claimed, however, that it had not cancelled the Option Agreement, and invoked its obligation to negotiate an extension to the option period. In addition, SKF offered to purchase Environamics on new terms, including a royalty for Appellants and a smaller up-front payment than the $9 million specified in the Option Agreement.

Appellants rejected SKF's new offer in January of 2005. In addition, Rockwood told Richards that as far as the Appellants were concerned, the Option Agreement "no longer exist[ed]." The parties continued to negotiate a possible acquisition by SKF throughout the next few months, during which time Rockwood repeatedly expressed Appellants' view that the Option Agreement was

no longer applicable.  By the end of 2005, negotiations had broken down completely.

In the spring of 2007, Wells Fargo declared Environamics to be in default on its loan.  Environamics filed for bankruptcy protection in the Bankruptcy Court for the District of New Hampshire.  In September of 2007, the Bankruptcy Court awarded control of Environamics to Wells Fargo.  Appellants are now responsible for roughly $5 million in personal guarantees on the Wells Fargo loan.

**E. Procedural History**

In March of 2008, Appellants filed a 29-count complaint against SKF in the state court of New Hampshire.  Appellants were initially represented by Marchosky, who is an attorney.  SKF removed the action to the U.S. District Court for the District of New Hampshire.  Appellants filed a First Amended Complaint and later a Second Amended Complaint.  The Second Amended Complaint included a promissory estoppel claim, the thrust of which was that Appellants took out the Wells Fargo loan in reliance on two promises by SKF: (1) that SKF would "exercise its option under the terms of the Option Agreement"; and (2) that SKF would "expend $10 million on its Environamics sales effort and put numerous sales people in the field."  The Second Amended Complaint also included breach of contract claims and claims under New Hampshire's unfair trade practices statute.

On July 31, 2009, SKF filed a motion for summary judgment
(the "First Summary Judgment Motion").  SKF argued, _inter alia_,
that (1) there was no evidence of a promise by SKF to buy
Environamics or to invest $10 million in the sales effort; (2) the
alleged promises were unenforceable as a matter of law due to lack
of specificity; and (3) Appellants could not have reasonably relied
on the promises due to the lack of specificity and to the existence
of written agreements covering the same subject matter.  At a
hearing on SKF's motion, the district court instructed the
Appellants to file affidavits stating "the time, place, and
specific content" of SKF's alleged promises.  On November 2, 2009,
Appellants both submitted affidavits (the "First Summary Judgment
Affidavits").  These Affidavits described, among other things, the
three telephone conversations with Richards that took place in or
around April of 2004.  According to Appellants, during these
conversations, Richards told Appellants that: (1) they should "not
worry about taking out the Wells Fargo loan because SKF was buying
their stock in Environamics under the Option Agreement"; (2) "SKF
was going to exercise its option under the Option Agreement and buy
the company"; and (3) the president of SKF's service division, Don
Poland, "had confirmed . . . SKF would buy the company under the
Option Agreement."  The Affidavits also stated that Richards told
Appellants on multiple occasions that SKF would invest $10 million
in the effort to sell Environamics products.  On November 3, 2009,

the district court denied SKF's First Summary Judgment Motion in a
one-line order, stating that "[f]acts material to the resolution of
the motion remain in dispute."

In July of 2010, Appellants, through new counsel, moved
for leave to file a Third Amended Complaint in order to "set forth
a more detailed and thorough factual basis for their promissory
estoppel claim." Appellants claimed that their new allegations
were "tied to the larger and more general promise, 'Don't worry, we
are buying your company.'" SKF objected to the proposed amendment
as untimely, since discovery had already closed and the summary
judgment deadline had already passed. SKF also argued that
Appellants were judicially estopped from claiming a "more general"
promise to buy Environamics because, in response to SKF's First
Summary Judgment Motion, Appellants had characterized SKF's promise
as a promise to buy Environamics on the terms of the Option
Agreement. In response to SKF's objection, Appellants pledged that
if they were allowed to amend their complaint, "they would not
pursue claims for breach of contract <u>or that specifically arise in
connection with the Option Agreement</u>" (emphasis added). Appellants
also proposed that SKF be allowed to file a renewed summary
judgment motion to challenge the new promissory estoppel theory.

The district court granted Appellants' motion to amend in
a written order on August 24, 2010. The court rejected SKF's
judicial estoppel argument because it found that "[i]t is not

logically impossible that SKF could have engaged in certain conduct toward the [Appellants] that caused them to believe it was buying their company under the Option Agreement, and other conduct toward the [Appellants] that caused them to believe SKF was buying their company on some other terms." However, as Appellants had suggested, the court permitted SKF to file a renewed summary judgment motion to challenge the new promissory estoppel theory. In addition, in a footnote, the court held that the promissory estoppel claim in the Third Amended Complaint "no longer relies on SKF's alleged commitment to expend $10 million in a sales campaign for Environamics products . . . ." Appellants did not object to any aspect of the district court's ruling.

SKF filed its new motion for summary judgment ("Second Summary Judgment Motion") on September 8, 2010. In support of their opposition to this motion, Rockwood and Marchosky again submitted affidavits (the "Second Summary Judgment Affidavits"). Both of these affidavits mentioned the phone calls with Richards in April of 2004. However, unlike the First Summary Judgment Affidavits, which stated that Richards promised that SKF would buy Environamics under the Option Agreement, the Second Summary Judgment Affidavits simply stated that Richards said that SKF "had committed to buying Environamics." The Second Summary Judgment Affidavits gave no indication that the Option Agreement was discussed at all during the April 2004 calls.

The district court granted SKF's motion on December 17, 2010.  See Rockwood v. SKF USA Inc., 758 F. Supp. 2d 44 (D.N.H. 2010).  The court accepted, "for present purposes," Appellants' claim that New Hampshire law applied to the case.  Id. at 56.  The court noted that in support of their motion for leave to file their Third Amended Complaint, Appellants had waived their theory that SKF promised to buy Environamics under the Option Agreement.  Id. at 57.  Thus, the court focused on Appellants' new theory, which was that SKF had promised to buy Environamics on some other, unspecified terms.  The court held that under New Hampshire law, Appellants could not have relied on any promises expressed in SKF's words or conduct prior to the signing of the Option Agreement because any promises were superseded by the Option Agreement itself.  Id. at 59-61.  The court then addressed the Appellants' reliance on statements and conduct by SKF that occurred after the execution of the Option Agreement.

First, the court considered Richards's alleged assurances during the April 2004 calls that SKF would buy Environamics.  The court noted that the Appellants' Second Summary Judgment Affidavits advanced a different characterization of Richards's statements during the April 2004 calls than that offered in the First Summary Judgment Affidavits.  The First Summary Judgment Affidavits claimed that Richards said that SKF would buy Environamics under the terms of the Option Agreement, while the Second Summary Judgment

-12-

Affidavits stated that Richards simply said SKF would buy
Environamics, without specifying the terms. Since Appellants had
relied on their earlier characterization of Richards's statements
in order to defeat SKF's First Summary Judgment Motion, the court
held that Appellants were judicially estopped from now claiming
that Richards had conveyed a more general promise. Id. at 61-63.
The court further held that even if judicial estoppel did not
apply, Appellants could not rely on the contradiction between the
First and Second Summary Judgment Affidavits in order to create a
triable issue of fact regarding what Richards said. See id. at 63
("'[A] party opposing summary judgment may not manufacture a
dispute of fact by contradicting his earlier sworn testimony
without a satisfactory explanation of why the testimony has
changed.'" (quoting Abreu-Guzmán v. Ford, 241 F.3d 69, 74 (1st Cir.
2001))). Finally, the court held that Appellants could not
reasonably have interpreted Richards's statements as anything other
than a promise to buy Environamics under the Option Agreement, a
theory that Appellants had waived. Id. at 63-64.

        The district court also rejected Appellants' argument
that there was a triable issue of fact regarding whether SKF's
business conduct manifested a promise to buy Environamics.
Appellants contended that SKF "usurp[ed]" Environamics by using SKF
sales personnel to sell Environamics products and by identifying
Environamics products as SKF products in marketing materials.

However, the district court noted that the Buy-Sell Agreement
contemplated exactly this type of relationship between SKF and
Environamics. Id. at 64. Furthermore, the court noted that the
Option Agreement was in place when SKF began selling Environamics
products pursuant to the Buy-Sell Agreement. Therefore, the court
held that even if Appellants could reasonably have interpreted
SKF's conduct as conveying a promise, they could only have
interpreted the promise as a promise to buy the company under the
Option Agreement. However, the Appellants had waived this theory
of the case when they filed their Third Amended Complaint. Id. at
64-65.

The district court entered judgment in SKF's favor on
December 21, 2010. This appeal followed.

## II. Discussion

Appellants argue that the district court erred when it
interpreted the Third Amended Complaint as abandoning any
promissory estoppel argument based on a promise by SKF to invest
$10 million in the effort to sell Environamics products.
Appellants then argue that the district court erred in granting
summary judgment to SKF.

The parties also dispute which state's law, New
Hampshire's or Pennsylvania's, applies in this case. In ruling on
SKF's Second Summary Judgment Motion, the district court assumed
the applicability of New Hampshire law. On appeal, SKF argues that

-14-

Pennsylvania law should apply.  We need not resolve this dispute, however, because our ultimate result would be the same under either state's law.  <u>See</u> <u>Steinke</u> v. <u>Sungard Fin. Sys. Inc.</u>, 121 F.3d 763, 775 (1st Cir. 1997) (declining to resolve choice of law dispute "because 'the outcome is the same under the substantive law of either jurisdiction'" (quoting <u>Lambert</u> v. <u>Kysar</u>, 983 F.2d 1110, 1114 (1st Cir. 1993))).  We therefore assume, without so deciding, that New Hampshire law applies in this case, and proceed accordingly.[2]

## A.  Abandonment of Claim That SKF Promised to Invest $10 Million

In its order granting Appellants' motion for leave to file their Third Amended Complaint, the district court noted that Appellants abandoned any promissory estoppel claim based on SKF's alleged promise to invest $10 million in the effort to sell Environamics products.  Appellants now argue that this statement was incorrect.  However, Appellants never raised this issue with the district court after the court entered its order granting leave to amend.  Our case law is clear that "arguments not raised in the

---

[2]    Appellants also challenge an order by the district court sanctioning them for discovery violations.  The district court found that Rockwood had deleted certain computer files that the court had ordered preserved.  As a sanction, the court ruled that, should the case go to trial, an adverse inference would be drawn against Rockwood's credibility.  Because we affirm the district court's ruling on summary judgment, we need not rule on Appellants' challenge to the discovery sanction.

district court cannot be raised for the first time on appeal."
<u>Sierra Club</u> v. <u>Wagner</u>, 555 F.3d 21, 26 (1st Cir. 2009).

Appellants contend that they could not have pressed their
claim relating to the alleged promise to invest $10 million in
their opposition to SKF's Second Summary Judgment Motion because by
that point, the district court had already ruled (incorrectly, they
contend) that they had waived this claim.  However, this argument
misses the point.  If Appellants objected to the district court's
characterization of their Third Amended Complaint, they could have
raised their objection with the district court in some form, <u>e.g.</u>,
through a motion for reconsideration.  <u>See</u> D.N.H. R. 7.2(e)
(specifying procedures for filing motions for reconsideration).  It
is Appellants' failure to object in any way to the district court's
conditioning of its order granting leave to amend on the
abandonment of the claim that resulted in its waiver.  <u>Cf.</u>
<u>Berkovitz</u> v. <u>Home Box Office, Inc.</u>, 89 F.3d 24, 31 (1st Cir. 1996)
("[T]his court from time to time has refused to permit appellants
to take advantage of supposed oversights that had not been called
to the district court's attention by way of a timeous motion to
reconsider.").

**B. Whether Summary Judgment Was Appropriate**

We review a district court's grant of summary judgment <u>de</u>
<u>novo</u>, "resolving all evidentiary conflicts and drawing all
reasonable inferences in favor of the nonmoving party."  <u>Kuperman</u>

v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011).  "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Cortés-Rivera v. Dep't of Corr. & Rehab. of P.R., 626 F.3d 21, 26 (1st Cir. 2010).  "[W]e are not married to the trial court's reasoning but, rather, may affirm on any independently sufficient ground made manifest by the record." Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011).  We must reverse the grant of summary judgment, however, if we find that the nonmovant has "established a genuine issue of material fact that a reasonable jury could resolve in their favor." Collins v. Univ. of N.H., 664 F.3d 8, 19 (1st Cir. 2011) (quoting Coffin v. Bowater, Inc., 501 F.3d 80, 97 (1st Cir. 2007) (internal quotation mark omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)).  However, "a conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Rather, "the party seeking to avoid summary judgment 'must be able to point to specific, competent evidence to support his claim.'"

Soto-Ocasio v. Fed. Express. Corp., 150 F.3d 14, 18 (1st Cir. 1998)
(quoting August v. Offices Unltd., Inc., 981 F.2d 576, 580 (1st
Cir. 1992)).

        The New Hampshire Supreme Court has adopted the
definition of promissory estoppel from Section 90 of the
Restatement (Second) of Contracts. See Marbucco Corp. v. City of
Manchester, 632 A.2d 522, 524 (N.H. 1993) (stating that even if
plaintiff's contract claim failed, it might still prevail on a
promissory estoppel theory, and citing Section 90). Under the
Restatement, "[a] promise which the promisor should reasonably
expect to induce action or forbearance on the part of the promisee
or a third person and which does induce such action or forbearance
is binding if injustice can be avoided only by enforcement of the
promise." Restatement (Second) of Contracts § 90 (1981).[3]

---

[3] The elements of a promissory estoppel claim under Pennsylvania
law are similar. See Crouse v. Cyclops Indus., 745 A.2d 606, 610
(Pa. 2000) ("In order to maintain an action in promissory estoppel,
the aggrieved party must show that 1) the promisor made a promise
that he should have reasonably expected to induce action or
forbearance on the part of the promisee; 2) the promisee actually
took action or refrained from taking action in reliance on the
promise; and 3) injustice can be avoided only by enforcing the
promise." (citing Restatement (Second) of Contracts § 90)). The
choice of law dispute between the parties concerns the level of
specificity of the promise that is required to support a promissory
estoppel claim. SKF contends that Pennsylvania law requires a
promise to meet a certain specificity threshold, and further
contends that the alleged promise in this case fails this
requirement. Appellants urge us to apply New Hampshire law, which
they claim has no specificity requirement. We need not consider
whether there is in fact any difference between New Hampshire and
Pennsylvania law regarding the specificity issue because
Appellants' claim fails under either standard.

Here, because Appellants waived their claim that SKF
promised to invest $10 million in the sales effort, we focus on the
question of whether there is a triable issue of fact regarding
SKF's alleged promise to buy Environamics.  Appellants do not
dispute that they waived the theory that SKF promised to exercise
its option under the Option Agreement.  Nor do Appellants dispute
that they could not have relied on any promise by SKF to buy
Environamics that occurred prior to the signing of the Option
Agreement.  The question before us, therefore, is whether,
resolving all evidentiary conflicts and drawing all reasonable
inferences in favor of Appellants, there is sufficient evidence to
survive summary judgment of a promise by SKF to buy Environamics <u>on
terms other than those of the Option Agreement</u> that was made <u>after</u>
the execution of the Option Agreement.

Appellants claim that there is evidence of both words and
conduct by SKF that constituted a promise to buy Environamics.  For
the former, Appellants point to Richards's alleged assurances
during the April 2004 calls.  For the latter, Appellants point to
Richards's actions to facilitate the Wells Fargo loan.  However,
the district court held that Appellants were judicially estopped
from characterizing Richards's statements during the April 2004
calls as expressing a promise to buy Environamics on terms other
than those of the Option Agreement.  Thus, in determining whether

-19-

the evidence creates a genuine issue of material fact, we must first decide whether the district court's judicial estoppel ruling was correct.

### 1. Application of Judicial Estoppel

We review a district court's application of judicial estoppel for abuse of discretion. See <u>Perry</u> v. <u>Blum</u>, 629 F.3d 1, 8 (1st Cir. 2010). Under this standard, we accept the district court's findings of fact unless they are clearly erroneous, but we review questions of law <u>de novo</u>. <u>Id.</u> A mistake of law is a <u>per se</u> abuse of discretion. <u>Id.</u> We apply the deferential abuse of discretion standard to judicial estoppel rulings even though we review summary judgment rulings <u>de novo</u>. See <u>Guay</u> v. <u>Burack</u>, 677 F.3d 10, 15 (1st Cir. 2012) ("the abuse of discretion standard is appropriate even when reviewing a judicial estoppel ruling on a motion for summary judgment" (citing <u>Alt. Sys. Concepts, Inc.</u> v. <u>Synopsys, Inc.</u>, 374 F.3d 23, 31 (1st Cir. 2004))).

Judicial estoppel is used "'to prevent a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.'" <u>Id.</u> at 16 (quoting <u>Alt. Sys. Concepts,</u> 374 F.3d at 32-33). "Where one succeeds in asserting a certain position in a legal proceeding, one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed." <u>Id.</u> (citing <u>New Hampshire</u> v. <u>Maine</u>, 532

-20-

U.S. 742, 749 (2001)).  The purpose of the doctrine is to protect
the integrity of the courts.  _Id._  Even if the earlier statement
that was later contradicted was made in good faith, a party is not
automatically shielded from judicial estoppel.  _Id._  There are two
conditions for the application of judicial estoppel.  "'First, the
estopping position and the estopped position must be directly
inconsistent, that is, mutually exclusive.'"  _Id._ (quoting _Alt._
_Sys. Concepts_, 374 F.3d at 33).  "'Second, the responsible party
must have succeeded in persuading a court to accept its prior
position.'"  _Id._

　　　　Here, on the first factor,  the district court found that
Appellants took two directly inconsistent positions regarding what
Richards told them during the April 2004 calls.  In their First
Summary Judgment Affidavits, Appellants clearly stated multiple
times that Richards told them that SKF would buy Environamics under
the Option Agreement.  In their Second Summary Judgment Affidavits,
however, Appellants simply stated that Richards told them that "SKF
had committed to buy Environamics," without any mention of the
Option Agreement.  The district court held that these affidavits
directly contradicted each other on a critical factual point, _i.e._,
what promise Richards conveyed to Appellants during the April 2004
calls.  We agree.  As to the second factor, it is clear that
Appellants had "succeeded in persuading [the district court] to
accept," _id._ at 9, at least for summary judgment purposes, their

earlier position that Richards said SKF would buy Environamics
under the Option Agreement; the district court denied SKF's First
Motion for Summary Judgment after Appellants submitted their First
Summary Judgment Affidavits.

        Appellants protest that the district court's ruling was
barred by the "law of the case" doctrine.  The law of the case
doctrine has two branches; the one relevant in this case provides
that "a court ordinarily ought to respect and follow its own
rulings, made earlier in the same case." Ellis v. United States,
313 F.3d 636, 646 (1st Cir. 2002) (citing Arizona v. California,
460 U.S. 605, 618 (1983)).  Appellants contend that, in granting
their motion to amend their complaint, the district court rejected
this very same judicial estoppel argument that it then adopted in
its ruling on the Second Summary Judgment Motion.  However, this
argument is based on a mischaracterization of the district court's
order granting leave to amend.

        In opposition to Appellants' motion to amend their
complaint, SKF argued that Appellants were judicially estopped from
asserting a new theory (that SKF made a "general" promise to buy
Environamics) because it contradicted the original theory (that SKF
promised to buy Environamics under the Option Agreement).  The
district court rejected this argument because it held that the two
theories were not contradictory, since SKF could have engaged in
certain conduct that caused Appellants to believe one promise and

-22-

other conduct that caused the Appellants to believe a different
promise.  According to Appellants, this ruling was the law of the
case on the judicial estoppel question.  However, the judicial
estoppel issue before the district court on the Second Summary
Judgment Motion was distinct from the issue raised in SKF's
opposition to the motion to amend.  The question on the Second
Summary Judgment Motion was not whether Appellants' two <u>theories</u>
were contradictory, but whether Appellants' <u>factual assertions</u>
regarding what Richards said in April 2004 were contradictory.
There was never any prior "ruling" on this latter question by the
district court; indeed there could not have been, because
Appellants' change in their factual position was not apparent until
they filed their Second Summary Judgment Affidavits.  Therefore,
the "law of the case" doctrine is inapplicable here.  <u>See</u> <u>United</u>
<u>States</u> v. <u>Matthews</u>, 643 F.3d 9, 12-13 (1st Cir. 2011) (law of the
case doctrine posits that a prior decision should govern the "<u>same</u>
issue[]" later in the case (emphasis added)).

      Appellants also contend that if there is a contradiction
between the First and Second Summary Judgment Affidavits, this
simply creates a credibility issue that should have been left to
the jury to resolve.  However, our case law is clear that "a party
opposing summary judgment may not manufacture a dispute of fact by
contradicting his earlier sworn testimony without a satisfactory
explanation of why the testimony is changed."  <u>Abreu-Guzmán</u>, 241

-23-

F.3d at 74.   Thus, even if judicial estoppel did not apply,
Appellants would not be permitted to rely on the contradiction
between their First and Second Summary Judgment Affidavits to
create an issue for the jury.

### 2. Whether the Remaining Evidence Creates an Issue for Trial

Although Appellants are barred from relying on their
testimony regarding Richards's promises during the April 2004 calls
to support their claim that SKF promised to buy Environamics, they
also contend that other evidence in the record supports their
claim.   We thus consider whether the other evidence in the record
is sufficient to enable Appellants to avoid summary judgment.

Appellants point to the deposition testimony of Allen
LeBoeuf ("LeBoeuf"), Environamics's Director of Marketing, who
participated in one of the April 2004 calls with Richards.   LeBoeuf
testified that during this call, Richards said that SKF "had
decided to buy the company," but that no terms were discussed
during the call.   There are two ways to interpret LeBoeuf's
testimony, neither of which helps Appellants.   LeBoeuf's testimony
could be interpreted to mean that Richards said SKF promised to buy
Environamics on the terms of the Option Agreement.   However,
Appellants expressly waived this theory.   Alternately, LeBoeuf's
testimony could be interpreted to mean that Richards said that SKF
promised to buy Environamics on some other terms.   However, as
discussed above, Appellants are judicially estopped from

characterizing Richards's statements during the April 2004 calls in this manner.

Appellants also contend that SKF represented to Wells Fargo that it would definitely buy Environamics. However, there is no evidence in the record to support this contention. David McIlroy ("McIlroy"), the President of Commercial Credit at Wells Fargo in Boston, Massachusetts, testified at his deposition that Richards told him that SKF's "hope" was to buy the company "after a period of time." However, McIlroy also testified that Richards never said that SKF had definitely decided to buy the company. Moreover, as the district court noted, in reviewing Appellants' loan application, Wells Fargo recognized the risk that SKF would not buy Environamics if it could not meet the sales target contemplated in the Buy-Sell Agreement. Rockwood, 758 F. Supp. 2d at 50-51.

We find that there is no "specific, competent evidence," Soto-Ocasio, 150 F.3d at 18, of any promise made by SKF to buy Environamics on terms other than those of the Option Agreement on which Appellants could reasonably have relied. Therefore, we conclude that the district court correctly granted summary judgment to SKF.[4]

---

[4]  Appellants claimed in the district court that SKF's actions in carrying out the Buy-Sell Agreement conveyed a promise to buy Environamics, but they do not repeat that claim here.

-25-

## III. **<u>Conclusion</u>**

The judgment of the district court is **<u>AFFIRMED</u>**.  Costs are granted to Appellee.